UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ILKB, LLC

                                    Plaintiff,

              - vs -                                    Civil Action No.

KEVIN SMITH, EDNA SMITH, LIFE KICK LLC.

                                    Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ILKB, LLC ("Plaintiff" or "ILKB"), by its attorneys, Gordon Rees Scully

Mansukhani, for its Complaint for Damages and Injunctive Relief against Defendants Kevin

Smith ("Mr. Smith"), Edna Smith ("Mrs. Smith"), and Life Kick, LLC ("LK"), collectively

"Defendants," respectfully alleges as follows:

## NATURE OF ACTION

1.      ILKB brings this action to protect its franchise system from rogue, former

franchisees, Kevin and Edna Smith (the "Smiths") and their former franchised business, LK, who

illegally used their prior relationship with ILKB to misappropriate ILKB's good will, customers,

and confidential information to form a competing fitness business in breach of their Franchise

Agreement and federal and state law.

2.      Defendants, having operated an ILKB franchise for nearly four years, changed the

name of their business to KickHouse Fort Worth while retaining the same location, same contact

information, same employees, and loyal customers.

3.      Rather than de-identify with ILKB, Defendants kept and used vestiges of their

relationship with ILKB in order to retain those customers, who had bought into the ILKB brand.

In their marketing and advertising materials and their social media presence, Defendants used ILKB trademarks and passed off results customers obtained using the proprietary ILKB system as their own. Defendants also continued to use ILKB's know-how, training methods, and other confidential and proprietary materials.

4.     Defendants' egregious conduct is an attempt by Defendants to line their own pockets at the expense of ILKB and the other franchisees in the system who continue to comply with the system's operational requirements in good faith.

5.     ILKB has invested significant time and money in building a franchise system of kickboxing fitness studios. The result is ILKB's innovative approach to fitness, marketing, and converting prospective leads into loyal and committed members. As in many franchise systems, protecting the brand and the integrity of the system are paramount concerns for the survival and success of the system as a whole.

6.     Defendants' illegal actions threaten to destroy that system.

7.     Consequently, ILKB seeks damages as described more fully below.

8.     ILKB also intends to seek preliminary and permanent injunctive relief due to the irreparable harm that Defendants will cause to ILKB if Defendants are not stopped.

9.     The relief requested herein is necessary to enforce ILKB's system standards and protect the integrity of the system against Defendants and their newly formed entity, who are determined to create a competing brand through misappropriation of ILKB's customers and proprietary systems.

## THE PARTIES

10.     Plaintiff ILKB is organized under the laws of the State of Florida with its principal place of business at 1844 Landsdowne Avenue, Merrick, NY 11710. ILKB is the

franchisor of iLoveKickboxing.com, a franchise of physical fitness studios focused on kickboxing. ILKB's member is a citizen of New York. The ILKB franchise system consists of over 200 studios operating throughout the United States and Canada.

11.     The Smiths are a married couple, who are natural persons that reside in Texas, in or around the Fort Worth area.  The Smiths are signatories to a franchise agreement with ILKB (the "Franchise Agreement") dated November 18, 2016. **Exhibit A**. This is a valid and enforceable agreement.

12.     LK is a Texas limited liability company with its principal place of business in Fort Worth, TX.

13.     By virtue of an agreement between the Smiths and ILKB, LK is also a party to the Franchise agreement.

14.     Defendants own and operate and fitness studio located at 6333 Camp Bowie Blvd, Suite 245, Fort Worth, TX 76116, (817) 231-0157 (the "Franchise Location"). Defendants operated their ILKB franchise from this location for almost four years.

15.     For a time, Defendants operated an unregistered business called Camp Bowie Kickboxing Challenge ("CBKC"), which offered the same services at the former Franchise Location. Some advertising material from that business, which uses ILKB's Marks remains posted on Facebook. **Exhibit B**.

16.     Today, Defendants operate an unregistered business called KickHouse Fort Worth at the former Franchise Location. Defendants' KickHouse materials are covered in ILKB logos. This business continues to offer the same services as when it was ILKB branded. **Exhibit C**.

## SUBJECT MATTER JURISDICTION

17.     This Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332.

Plaintiff is a citizen of New York. Defendants are Texas Citizens; thus, there is complete diversity of citizenship between ILKB and Defendants, and the amount in controversy exceeds $75,000, exclusive of fees and costs.

18.     Subject matter jurisdiction in this Court also exists under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.

19.     Subject matter jurisdiction over the remaining claims also exists pursuant to 28 U.S.C. § 1367 because those claims for relief are so related to the other causes of actions as to form part of the same case or controversy.

<u>**PERSONAL JURISDICTION AND VENUE**</u>

20.     This Court has personal jurisdiction over Defendants pursuant to New York's long arm statute, C.P.L.R. § 302(a)(1) because the Defendants transacted business in the State of New York and this action arises out of that business transaction.

21.     Personal jurisdiction exists under New York's long arm statute, C.P.L.R. § 302(a)(3) because Defendants' actions caused injury in the state of New York and they reasonably should have expected damages to occur in the state based on the prior, substantial revenue gained by the Defendants through their participation in interstate commerce.

22.     This Court also has personal jurisdiction over Defendants because they consented and submitted to personal jurisdiction in either New York or Nassau County, New York pursuant to the Franchise Agreement.

23.     Venue in this Court is appropriate under 28 U.S.C. § 1391.

24.     In addition, and pursuant to the Franchise Agreement, Defendants waived any objection to the laying of venue in this Court. The Franchise Agreement and all related matters are expressly governed by the laws of New York, without regard to the principles of conflicts of

laws, and provides that any dispute between ILKB and Defendants shall take place in New York.

### THE DEFENDANTS' FRANCHISE AGREEMENT

25.     The relationships between ILKB and its franchisees are governed by franchise agreements, each of which contain essentially the same terms and provisions and are intended to govern each franchisee's operation of a single iLoveKickboxing.com studio within a specified geographic territory.

26.     Because many franchisees in the system are business entities, important provisions of the franchise agreements also apply to "Principal Equity Owners." Both of the Smiths are Principal Equity Owners and, therefore, are bound by certain contractual provisions specified in the Franchise Agreement. By virtue of a Transfer of Franchise to a Corporation or Limited Liability Agreement, LK agreed "to become a party to and to be bound by all of the provisions of the Franchise Agreement… to the same extent as if it were named as the Franchisee[.]"

27.     Defendants and ILKB are parties to the Franchise Agreement, which granted them the right to develop an ILKB studio in the Fort Worth, Texas area (the "Territory"). Defendants opened their studio in early 2017.

28.     The Franchise Agreement has a five year term. Defendants' initial term was scheduled to expire on November 16, 2021.

29.     To protect ILKB's franchise business, trade secrets, and confidential information, including without limitation information regarding the "operational, sales, promotional, and marketing methods and techniques of the System," Article XI of the Franchise Agreement restricted Defendants from certain in-term activities which might harm ILKB and its franchise system.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 5

30.     First, pursuant to Section 11.1(a), during the term of their franchisee, Defendants promised not to "operate, manage, own, assist or hold an interest in (direct or indirect as an employee, officer, director, shareowner, partner or otherwise), or engage in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, without our express prior written consent."

31.     Second, pursuant to Section 11.1(b), Defendants promised not to "(i) divert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System, or (iii) solicit without our prior consent any person who is at that time employed by us or any related entity to leave his or her employment."

32.     Pursuant to Article VIII, Defendants also agreed to operate in conformity with the methods and standards required of all franchisees. Defendants, like all other ILKB franchisees, are aware that other franchisees in the system are similarly bound.

33.     Under Section 8.2 of the Franchise Agreement, Defendants were required to keep the Confidential Operations Manual, a document developed to direct franchisees in how to operate their ILKB-branded business, confidential and return it at the end of their term.

34.     Under the Franchise Agreement, franchisees are required to maintain a telephone number for their franchise. At the end of the term, they are required to turn that number over to ILKB or cancel the listing. Ex. A §§ 8.9, 15.1.

35.     Under Section 9.1 of the Franchise Agreement, Defendants were prohibited from using ILKB's trademarks for any purposes not approved in the Confidential Operations Manual.

36.     Under Section 9.3 of the Franchise agreement, Defendants were prohibited from

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 6

using any of ILKB's trade secrets and confidential and proprietary information for any purposes

other than the operation of an ILKB franchise as described in the Confidential Operations

Manual.

37.     Under Section 11.2 of the Franchise Agreement, the Smiths agreed to an 18

month non-competition agreement following their termination or separation from ILKB. That

clause prohibits Defendants from either directly or indirectly "operat[ing], manag[ing], own[ing],

assist[ing] or hold[ing] an interest in…, or engag[ing] in, any competing business selling goods

or offering services equivalent to ILKB Services and Products or the Franchised Business, within

a radius of 25 miles of your Outlet or any other authorized retail location selling ILKB Services

and Products, without our express prior written consent." This clause further prohibited using

any confidential or proprietary information.

38.     Under section 15.1 of the Franchise Agreement, upon termination, Defendants

were required to

a.   Discontinue the use or display of ILKB Marks;

b.   cease operations of ILKB franchise location;

c.   contact Yelp, and other online websites to request removal of ILKB Marks used

in connection with your ILKB franchise location;

d.   return all proprietary and confidential information as outlined in Section 15.2; and

e.   assign all interest and right to telephone numbers and listings to ILKB.

## ILKB'S INTELLECTUAL PROPERTY, TRADE SECRETS, AND CONFIDENTIAL
## INFORMATION

39.     At considerable effort and expense, ILKB has developed confidential and

proprietary information concerning the marketing and sales of its franchises. Among other

things, ILKB has conceived and developed various service marks and trade dress, business plans, service delivery strategies, training materials, cost models and budgets, and lead generation systems which are highly proprietary to ILKB. ILKB's trade secrets are at least partly contained within its Confidential Operations Manual.

40.     ILKB expends significant resources, in terms of capital investment and time, to develop customized marketing strategies to bolster the value of the iLoveKickboxing.com brand and sell franchises. For this reason, ILKB takes special precautions to maintain the confidentiality of its confidential and proprietary information.

41.     ILKB has the right to license the federally registered iLoveKickboxing.com® trademarks, service marks, logos, and derivations thereof (the "Marks") for use by its franchisees to be used solely in the operation of an ILKB branded business.

42.     These marks include, but are not limited to:

   a.   The service mark iLoveKickboxing.com, Registration No. 4,009,496, registered on
        August 8, 2011.



   b.   The service mark                           , Registration No. 4,324,564,
        registered on April 23, 2013.



    c.   The service mark                 , Registration No. 5,446,133, registered on April 17, 2018.

43.      ILKB also licenses to its franchisees the right to participate in its confidential and proprietary business systems pursuant to written franchise agreements, which are reasonably and carefully tailored to protect ILKB's valuable confidential information, reputation, goodwill, and other legitimate business interests.

44.      ILKB owns the distinctive and well-known iLoveKickboxing® system, which offers in-person and online fitness classes, which focus on kickboxing to the public under the Marks.

45.      Under the Franchise Agreement, Defendants had a limited license to use the Marks. Defendants agreed to only use the Marks in conjunction with the operation of their ILKB franchises. They specifically agreed that they would not "display Marks except in the manner [ILKB] authorize[d]." Ex. A § 8.3. Moreover, they acknowledged that "the use of the Marks outside the scope of the terms of this Agreement without [ILKB's] written consent is an infringement of the Owner of the Marks' and our exclusive rights, title and interest in and to the Marks." *Id*. at § 9.3.

46.      Over the course of their franchise relationship with ILKB, Defendants had complete access to and, upon information and belief, did access, significant quantities of information related to ILKB franchise model, which included marketing materials, methods, and

opportunities; potential revenues associated with those opportunities, franchisee owner and contact information; customer and prospect lists; and ILKB's approach to meeting the needs and requirements of its franchisees.

47.    ILKB carefully safeguards its confidential and proprietary business information by, among other things, limiting access to such information to existing franchisees, maintaining computer security devices, and requiring franchisees to agree that they will not disclose confidential information to anyone outside of ILKB and its franchise system pursuant to Section 9.3 of the franchise agreements.

48.    Defendants, by virtue of the Franchise Agreement, gained access to this information and, pursuant to Section 9.3, promised to keep it confidential and only use it for ILKB business. This information is not generally known, costly to produce, and difficult to obtain.

49.    Defendants participated in regular meetings and trainings between ILKB and franchisees, which included discussions about planning, services, cost information, profit margins, sales training, strategic decisions with respect to ILKB's franchise system, and the future direction and long term growth challenges and opportunities of ILKB. Defendants received confidential and proprietary information only disclosed to ILKB's most-trusted and successful franchisees and not shared with other employees, clients, prospective clients, or third-parties.

50.    Through their interaction with ILKB personnel and executives, Defendants have obtained a great deal of knowledge with respect to the personal fitness marketplace and marketing strategies which are proprietary to ILKB and were developed by ILKB for the sole benefit of itself and its franchisees.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 10

## DEFENDANTS' CONTRACTUAL BREACHES AND VIOLATIONS OF LAW

51.     Defendants, benefiting from the goodwill associated with ILKB's service marks and trade dress, and employing ILKB's trade secrets and confidential information, were successful in the opening and operation of their studios in Texas.

52.     Defendants—as a result of their status as ILKB franchisees and manifestly unlawful actions—are in a unique position to improperly take advantage of the goodwill that ILKB has invested a significant amount of time and resources developing and cultivating with its franchisees.

53.     During the term of their Franchise Agreement, Defendants began a scheme to compete with ILKB by developing a new brand of fitness studio: Camp Bowie Kickboxing Challenge ("CBKC"). That business offered effectively the same services and sought to take advantage of the customer base that Defendants developed using the ILKB system. Based on information and belief, Defendants continue to use ILKB branded equipment and confidential methods in the operation of their business.

54.     In or around June 2020, Defendants rebranded their business as Camp Bowie Kickboxing Challenge ("CBKC"). Upon abandoning their franchise, Defendants were prohibited from using the Marks.

55.     Despite rebranding, Defendants continued to associate their business with the Marks in order to promote their brand and retain brand continuity with ILKB. Specifically, Defendants continued to use the Marks on social media, on their physical signage, and on their mobile phone application. True and correct copies of images showing CBKC's misuse of the Marks is attached as Exhibit D.

56.     In or around August 2020, Defendants rebranded again as KickHouse Fort Worth.

57.     Upon information and belief, Defendants are now associated with Kick House Fitness, LLC, a new, unregistered franchisor, who has been working with several former ILKB franchisees in violation of their franchise agreements to establish a competing brand.

58.     Despite rebranding as KickHouse, and, in fact, selling KickHouse merchandise in their online store, Defendants continued to associate their business with the Marks in order to promote their brand and retain brand continuity. Specifically, Defendants continued to use the Marks on social media, on their physical signage, and on their mobile application. True and correct copies of images showing Defendants' misuse of the Marks is attached as Exhibits B-D.

59.     By continuing to use the Marks for their commercial benefit without authorization, Defendants are actively violating federal law and their Franchise Agreement.

60.     On or around June 23, 2020, Defendants sent ILKB a "notice to cure letter," in which they claimed certain defaults as well as a right to continue to use ILKB's Marks and system and not pay royalties.

61.     On or around August 4, 2020, Defendants sent ILKB a "termination letter," expressing their intent to stop operating as an ILKB franchisee and continue to operate the business in a different fashion.

62.     Between June 23 and August 24, Defendants did not participate in the mandatory dispute resolution proceedings, including an in person meeting and mediation.

63.     Upon information and belief, the Defendants' use knowledge of ILKB's confidential information and trade secrets in the operation of KickHouse, which is a material breach of the Franchise Agreement.

64.     Defendants competed against ILKB in direct violation of their Franchise Agreement both during their time as a franchisee and after their term ended.

65.     Defendants' unique knowledge of ILKB's confidential information and strategies will give Defendants a distinctly unfair advantage in competing with ILKB for business. Unlawfully possessing ILKB's proprietary information, such as that described above, would enable and have enabled the Defendants to make decisions about their own plans that take into account ILKB's confidential business information.

66.     Defendants have continued to use ILKB's intellectual property, including but not limited to its trademarks, trade dress, and service marks in violation of Article IX of the Franchise Agreement.

67.     Defendants have been using the same telephone numbers and addresses for the former franchise locations on business cards, their websites, and social media profiles.

68.     Defendants have been using photographs from ILKB customers, which use ILKB's Marks on their websites, and social media profiles. These images promote a deliberately false impression that CBKC and/or KickHouse, not the ILKB system, produced these results. *See* Exhibit B at 1. These photos also suggest that ILKB was either associated with or approved of CBKC and/or KickHouse, which is false.

69.     ILKB terminated its relationship with Defendants on August 13, 2020, by sending a notice of termination letter. This letter reminded Defendants of their post-termination obligations under the franchise agreement, including:

a.  Immediately returning all copies of the Confidential Operations Manual and all promotional materials;

b.  De-identifying with ILKB, including referencing themselves as formerly associated with ILKB;

c.  Removing all ILKB marks and discontinuing any communications that suggest a

relationship with ILKB;

    d.    Transferring all telephone numbers for the location to ILKB or canceling and

delisting them; and

    e.    Not competing with ILKB for 18 months unless Franchisor gives written

approval.

    70.    Defendants were also reminded of the consequences of failing to comply with

their duties under the Franchise Agreement.

    71.    As of this date, Defendants continue to violate all of their post-termination

obligations.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

    72.    ILKB realleges the allegations contained in paragraphs 1 through 71 of this

Complaint as if set forth fully herein.

    73.    ILKB and Defendants are parties to a valid and enforceable Franchise Agreement.

    74.    ILKB has substantially performed all of its duties associated with the Franchise

Agreement.

    75.    Pursuant to the terms of the Franchise Agreement, Defendants are prohibited

from, inter alia, (a) directly or indirectly operating, managing, owning, assisting, or holding an

interest in any competing business selling goods or offering services equivalent to ILKB

Services and Products or the Franchised Business; (b) diverting or attempting to divert any

business or customer of the Franchised Business to any competitor; (c) doing or performing any

act injurious or prejudicial to the goodwill associated with the Marks or the franchise system; (d)

using telephone numbers from the former franchise locations; (e) using ILKB's Marks; and (f)

using ILKB's confidential information.

76.     The in-term and post-term restrictive covenants are reasonable and necessary for the protection of ILKB's legitimate interest in its trade secrets and confidential information and the integrity of its franchise system.

77.     As described above, Defendants breached the terms of the Franchise Agreement by creating and operating the competing CBKC and KickHouse businesses at the same locations and contact information, using the same personnel, stealing ILKB's customer and confidential information, and using ILKB's Marks in their materials.

78.     In so doing, Defendants have diverted customers and other ILKB franchisees toward the competing enterprises and otherwise taken action injurious to the goodwill associated with the ILKB service marks, trade dress, and franchise system.

79.     If Defendants are not enjoined from joining a directly competitive business, from violating their Agreements, and from using or disclosing ILKB's trade secrets and other confidential proprietary information, ILKB will suffer immediate and irreparable harm to its business and goodwill, including but not limited to: loss of business and commercial reputation, goodwill, business and economic opportunities, loss of use of its own property, and loss of use and disclosure to a competitor of this valuable confidential and proprietary information.

80.     In addition, as a proximate and direct result of Defendants' actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, consequential, and liquidated damages.

## SECOND CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Common Law of the State of New York)

81.     ILKB realleges the allegations contained in paragraphs 1 through 71 of this

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 15

Complaint as if set forth fully herein.

82.     By virtue of his contractual relationships with ILKB, ILKB gave Defendants access to trade secrets and confidential and proprietary information ("Trade Secret Information")—information that is valuable to ILKB's franchise model and gives ILKB an advantage over competitors.

83.     Defendants have a common law duty prohibiting him from using Trade Secret Information procured during their franchise relationship with ILKB for any purpose other than for the benefit of franchise and, by extension, ILKB as franchisor.

84.     Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain.

85.     ILKB is entitled to preliminary and permanent injunctive relief.

86.     Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

87.     In addition to giving rise to injunctive relief, the Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer substantial damages, including without limitation direct, incidental, and consequential damages, in an amount to be established at trial.

88.     Defendants' misappropriation of ILKB's Trade Secret Information was intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive damages appropriate.

### **THIRD CAUSE OF ACTION**

(Misappropriation of Trade Secrets under the Statutory Laws of the United States)

89.     ILKB repeats and realleges the allegations contained in paragraphs 1 through 71 of this Complaint as if set forth fully herein.

90.     The Trade Secret Information obtained by defendants relates to ILKB's business and services that are maintained and provided in interstate commerce.

91.     The Trade Secret Information obtained by defendants is a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because, inter alia, it is secret and of value as a result of not being generally known as set forth above, and ILKB takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by ILKB to have access thereto.

92.     Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain. They have shared this information with CBKC and their employees, who know that this information has been illegally misappropriated, but nonetheless use it in the operation of their businesses.

93.     As a result of Defendants' misappropriation of ILKB's Trade Secret Information, defendants have and continue to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

94.     Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), ILKB is entitled to preliminary and permanent injunctive relief.

95.     Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

96.     In addition to giving rise to injunctive relief, Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to

suffer actual damages in an amount to be established at trial.

97.     By virtue of Defendants' bad faith and willful and malicious misappropriation of

ILKB's Trade Secret Information, ILKB is entitled to an award for its damages, reasonable

royalties, exemplary damages in an amount up to two times awarded damages and reasonable

attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-

(D).

## FOURTH CAUSE OF ACTION

### (Unfair Competition)

98.     ILKB realleges the allegations contained in paragraphs 1 through 71 of this

Complaint as if set forth fully herein.

99.     Defendants have engaged in conduct intended to undermine, destroy and

misappropriate the business of ILKB by using ILKB's Trade Secret Information to compete

unfairly with ILKB in violation of defendants' contractual obligations and the common-law.

100.    Defendants' conduct constitutes common law unfair competition, and unless they

are enjoined, ILKB will suffer irreparable injury for which it is no adequate remedy at law.

101.    In addition, as a proximate and direct result of Defendants' actions, ILKB has and

will continue to suffer substantial money damages, including without limitation direct,

incidental, and consequential damages.

## REQUEST FOR INJUNCTIVE RELIEF

102.    ILKB re-alleges the allegations contained in paragraphs 1 through 71 of this

Complaint as if set forth fully herein.

103.    For all the foregoing reasons, and as monetary damages are inadequate to fully

compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer

relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement, ILKB prays for a preliminary and permanent injunction as set forth in Paragraph A of its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, ILKB demands judgment as follows:

A.      As monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement including: (i) offering, advertising, marketing or otherwise engaging in competitive services against ILKB for the duration of the Franchise Agreement and pursuant to the post-termination provisions specified under Section 11.2; (ii) using ILKB's trade secrets and confidential and proprietary information in a manner which would result in harm to ILKB and its franchise system; (iii) soliciting, directly or indirectly, any ILKB franchisees or prospects for benefit of the KickHouse brand; (iv) inducing or encouraging any ILKB franchisees to breach their respective franchise agreements with ILKB, including without limitation those provisions designed to preserve and maintain the uniformity of the system (Article VIII); (v) using ILKB's Marks; or (vi) using the former contact information for ILKB.

B.      An award of damages in an amount sufficient to compensate it for any

ascertainable and calculable damages, losses, and/or loss of revenues and opportunities occasioned by Defendants' wrongful conduct as described herein, including, but not limited to, payment of past and future lost royalties occasioned by Defendants' breach of contract, direct and indirect damages for misappropriation of trade secrets and confidential and proprietary information, and damages for tortious interference and unfair competition;

   C. An award of pre-judgment interest on all such sums awarded;

   D. An award of punitive and exemplary damages and reasonable royalties as the Court may deem appropriate; and

   E. An award of costs, disbursements and attorneys' fees incurred in connection with this action, as well as any other and further relief as the Court may deem just, proper, and equitable.

Dated:  September 10, 2020.   GORDON REES SCULL MANSUKHANI, LLP

          By: */s/*_____
             Peter G. Siachos, NY Bar #4436168
             psiachos@grsm.com
             1 Battery Park Plaza, 28th
             New York, NY 10004
             Phone: (973) 549-2527
             Fax: (973) 377-1911

             *Attorneys for Plaintiff ILKB*